OPINION of the Court, by
Ch. J. Edwards
The only assignment of error jhat seems to merit the const- *304 deration of this court, “ is, that the circuit court erred id overruling the motion for a new trial,” t© prove which, the testimony is spread upan the record in an exception filed to the opinion of the court upon that subject. To this mode of proceeding, there are in general many well founded objections ; and although cases may exist under such circumstances as may claim the corrective interposition of this court, it is presumed they must be few in number, and they should be very strongly marked by injustice. The witnesses "have at such times generally left the court ; their words, fugitive and evanescent in their nature, are to be recollected; they are liable to be forgotten ; to be misunderstood ; and one party or the other is always interested in giving an improper coloring to them. The manner of giving testimony frequently forms an important feature in it, and is difficult if not impossible to transfuse into any written statements i and the refusal oí the inierior courts to grant a new trial upon the merits, like the certificate of a judge at nisi prius¡ is entitled to great consideration, from the superior opportunities they have had of judging, and from that just and honorable confidence that is reposed in them, that they have exercised their judgments with justice and impartiality. Besides, this is rather an eccentric mode of proceeding ; regularly, if the testimony is irrelevant or incompetent, the party against whom it is given should except to it ; if he thinks it insufficient to support his adversary’s case, he should either demur, or move the court to instruct the jury, as upon a non suit; in either oí which cases, there is less liability to mistake or misapprehension, because the witnesses would then be present, and have an opportunity of giving the facts to which they deposed in,their own words, which might then be more correctly taken down, and truth better preserved in a demurrer or bill of exceptions than at any other time afterwards. These considerations are sufficient to decide this court to exercise with great caution and circumspection their pow er over such cases, and to interpose only where the demands of justice evidently and imperiously require it of them.
In fuch cafe the court fhould take every rational inteicnce «gainst the party' moving it, as if he had demurred to the evidence»
The present is not such a case, it falls greatly short of it ; in a motion for anew trial on such grounds the party who makes it is bound to admit every reasonable inference that can be drawn from the testimony against *305 him, as much so at least as if it were a demurrer to evidence ; applying this rule to the present case there is an end to the question, and if this is not the rule, we should usurp the legitimate powers of the jury, in deciding the credibility of witnesses.
The point in controversy seems to be, whether Gist did undertake, as is in the declaration set forth, whether he did agree to take charge of the flour, &c. of Higgins. It is proved that he was the supercargo of William. Gist and Leavy, to whom Higgins applied for permission to put his flour, See. on board, to which they assented ; that when the subject was mentioned to the appellant, he positively refused to have any thing to do with Higginses property, but on the request of William Gist to take it in for the said Higgins, the appellant received from the hands of William Gist, acting for the said Higgins, the flour and Bacon in the declaration mentioned, the said appellant knowing it was said Higgins’s property ; that when the appellant returned from his voyage he told said Higgins if he would come over to his house the next morning or the morning after, he would settle with him for his flour and bacon. In the reception of the flour and bacon in the manner set forth, it appears from the strongest implication, that the appellant had abandoned his first objections, and yielded his assent to take the flour and bacon ; but if this were doubtful, his subsequent declarations on his return, remove all doubt, for if he had not received the flour and bacon on account of the said Higgins, and undertaken as set forth, why would he have requested the said Higgins to come over to his house and promised to settle with him. To say the least- of it, this was proper testimony to go to the jury, and they were competent to decide, and we cannot say that the inferences they appear by their verdict to have drawn are incorrect.
Judgment affirmed.